UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
File No.:

## CIVIL ACTION COMPLAINT

| | |
|---|---|
| Robert Raasch and Linda Raasch, | : |
| | : |
| Plaintiffs, | : |
| | : |
| vs. | : |
| | : |
| CBL & Associates, Inc. a/k/a CBL & Associates Properties, Inc. d/b/a Hanes Mall; | : |
| CBL & Associates Management, Inc. d/b/a Hanes Mall; | : |
| CBS Corporation (a Delaware Corporation) f/k/a Viacom, Inc. (sued as successor-by-merger to CBS Corporation (a Pennsylvania Corporation) f/k/a Westinghouse Electric Corporation); | : |
| Dover Corporation f/k/a Dover Elevator Company; | : |
| Honeywell International, Inc. f/k/a Allied-Signal, Inc. (sued as successor-in-interest to Bendix Corporation); | : |
| Kimpton Hotel & Restaurant Group, LLC (sued individually and as an owner of the Reynolds Building); | : **JURY TRIAL DEMANDED** |
| Metropolitan Life Insurance Company; | : |
| Oshkosh B'Gosh, Inc., a subsidiary of Carter's Inc.; | : |
| Otis Elevator Company; | : |
| PMC Property Group, Inc. (sued individually and as an owner of the Reynolds Building); | : |
| ThyssenKrupp Elevator Corporation (sued individually and as successor-in-interest to Dover Elevator Company); | : |
| United Technologies Corporation (sued as successor-in-interest to Otis Elevator Co.), | : |

Defendants.

## CIVIL ACTION COMPLAINT

Plaintiffs Robert Raasch and Linda Raasch sue the above-named Defendants for compensatory and punitive damages and allege as follows:

1

## PARTIES

1.     Plaintiffs Robert Raasch and Linda Raasch are citizens and residents of the County of Surry, State of North Carolina.

2.     Defendant, **CBL & ASSOCIATES, INC.** a/k/a CBL & ASSOCIATES PROPERTIES, INC. d/b/a HANES MALL, was and is a company incorporated under the laws of the State of Tennessee with its principal place of business in Tennessee. At all times material hereto, CBL & ASSOCIATES, INC. a/k/a CBL & ASSOCIATES PROPERTIES, INC. d/b/a HANES MALL owned and/or controlled premises where Plaintiff Robert Raasch worked with and around asbestos, asbestos-containing products and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products.   CBL & ASSOCIATES, INC. a/k/a CBL & ASSOCIATES PROPERTIES, INC. d/b/a HANES MALL has and does business in the State of North Carolina.

3.     Defendant, **CBL & ASSOCIATES MANAGEMENT, INC.** d/b/a HANES MALL, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Tennessee. At all times material hereto, CBL & ASSOCIATES MANAGEMENT, INC. d/b/a HANES MALL owned and/or controlled premises where Plaintiff Robert Raasch worked with and around asbestos, asbestos-containing products and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products. CBL & ASSOCIATES MANAGEMENT, INC. d/b/a HANES MALL has and does business in the State of North Carolina.

4.     Defendant, **CBS CORPORATION** (a Delaware Corporation) f/k/a VIACOM, INC. (sued as successor-by-merger to CBS CORPORATION (a Pennsylvania Corporation) f/k/a WESTINGHOUSE ELECTRIC CORPORATION), was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New York. At all times material hereto, CBS CORPORATION (a Delaware Corporation) f/k/a VIACOM, INC. (sued as successor-

2

by-merger to CBS CORPORATION (a Pennsylvania Corporation) f/k/a WESTINGHOUSE ELECTRIC CORPORATION) was a manufacturer of asbestos-containing Westinghouse Elevators. CBS CORPORATION (a Delaware Corporation) f/k/a VIACOM, INC. (sued as successor-by-merger to CBS CORPORATION (a Pennsylvania Corporation) f/k/a WESTINGHOUSE ELECTRIC CORPORATION) has and does business in the State of North Carolina.

5.    Defendant, **DOVER CORPORATION** f/k/a DOVER ELEVATOR COMPANY, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Illinois.    At all times material hereto, DOVER CORPORATION f/k/a DOVER ELEVATOR COMPANY was a manufacturer of asbestos-containing Dover Elevators. DOVER CORPORATION f/k/a DOVER ELEVATOR COMPANY has and does business in the State of North Carolina.

6.    Defendant, **HONEYWELL INTERNATIONAL, INC.** f/k/a ALLIED-SIGNAL, INC. (sued as successor-in-interest to BENDIX CORPORATION), was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New Jersey.    At all times material hereto, HONEYWELL INTERNATIONAL, INC. f/k/a ALLIED-SIGNAL, INC. (sued as successor-in-interest to BENDIX CORPORATION) was a manufacturer of asbestos-containing Bendix Brakes. HONEYWELL INTERNATIONAL, INC. f/k/a ALLIED-SIGNAL, INC. (sued as successor-in-interest to BENDIX CORPORATION) has and does business in the State of North Carolina.

7.    Defendant, **KIMPTON HOTEL & RESTAURANT GROUP, LLC** (sued individually and as an owner of the REYNOLDS BUILDING), was and is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in California. The members of the "LLC" who comprise KIMPTON HOTEL & RESTAURANT GROUP, LLC (sued individually and as an owner of the REYNOLDS BUILDING) are: Michael DeFrino and

3

Kathleen Reidenbach who reside in San Francisco, California; Paul Huang and Homero Torres who reside in Atlanta, Georgia; and Donald McNamara who resides in Dallas, Texas. At all times material hereto, KIMPTON HOTEL & RESTAURANT GROUP, LLC (sued individually and as an owner of the REYNOLDS BUILDING) owned and/or controlled premises where Plaintiff Robert Raasch worked with and around asbestos, asbestos-containing products and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products. KIMPTON HOTEL & RESTAURANT GROUP, LLC (sued individually and as an owner of the REYNOLDS BUILDING) has and does business in the State of North Carolina.

8.      Defendant, **METROPOLITAN LIFE INSURANCE COMPANY**, was and is a company incorporated under the laws of the State of New York with its principal place of business in New York. At all times material hereto, METROPOLITAN LIFE INSURANCE COMPANY conspired with other asbestos suppliers and asbestos-containing product and/or equipment manufacturers to mislead the public as to the hazards of asbestos. METROPOLITAN LIFE INSURANCE COMPANY has and does business in the State of North Carolina.

9.      Defendant, **OSHKOSH B'GOSH, INC.**, a subsidiary of CARTER'S INC., was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Wisconsin. At all times material hereto, OSHKOSH B'GOSH, INC., a subsidiary of CARTER'S INC. owned and/or controlled premises where Plaintiff Robert Raasch worked with and around asbestos, asbestos-containing products and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products. OSHKOSH B'GOSH, INC., a subsidiary of CARTER'S INC. has and does business in the State of North Carolina.

10.      Defendant, **OTIS ELEVATOR COMPANY**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Connecticut. At all

4

times material hereto, OTIS ELEVATOR COMPANY was a manufacturer of asbestos-containing Otis Elevators. OTIS ELEVATOR COMPANY has and does business in the State of North Carolina.

11.     Defendant, **PMC PROPERTY GROUP, INC.** (sued individually and as an owner of the REYNOLDS BUILDING), was and is a company incorporated under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania. At all times material hereto, PMC PROPERTY GROUP, INC. (sued individually and as an owner of the REYNOLDS BUILDING) owned and/or controlled premises where Plaintiff Robert Raasch worked with and around asbestos, asbestos-containing products and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products. PMC PROPERTY GROUP, INC. (sued individually and as an owner of the REYNOLDS BUILDING) has and does business in the State of North Carolina.

12.     Defendant, **THYSSENKRUPP ELEVATOR CORPORATION** (sued individually and as successor-in-interest to DOVER ELEVATOR COMPANY), was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Georgia. At all times material hereto, THYSSENKRUPP ELEVATOR CORPORATION (sued individually and as successor-in-interest to DOVER ELEVATOR COMPANY) was a manufacturer of asbestos-containing Dover Elevators. THYSSENKRUPP ELEVATOR CORPORATION (sued individually and as successor-in-interest to DOVER ELEVATOR COMPANY) has and does business in the State of North Carolina.

13.     Defendant, **UNITED TECHNOLOGIES CORPORATION** (sued as successor-in-interest to OTIS ELEVATOR CO.), was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Connecticut. At all times material hereto, UNITED TECHNOLOGIES CORPORATION (sued as successor-in-interest to OTIS ELEVATOR CO.) was a manufacturer of asbestos-containing Otis Elevators. UNITED TECHNOLOGIES

5

CORPORATION (sued as successor-in-interest to OTIS ELEVATOR CO.) has and does business in the State of North Carolina.

14.     Plaintiffs bring this action for monetary damages as a result of Plaintiff Robert Raasch contracting an asbestos-related disease. Plaintiff Robert Raasch was diagnosed with mesothelioma on or about January, 2017.

15.     Plaintiff Robert Raasch was wrongfully exposed to and inhaled, ingested or otherwise absorbed asbestos fibers, an inherently dangerous toxic substance, as described below:

(a)     From approximately 1951 to the early 2000's, Plaintiff Robert Raasch experienced exposure to asbestos while performing maintenance on his personal automobiles.  During this time, Plaintiff Robert Raasch worked with and around asbestos-containing products and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products including, but not limited to, Bendix Brakes.

(b)     From approximately 1962 to 1968, Plaintiff Robert Raasch experienced exposure to asbestos while working as an elevator installer and elevator repairman for A. Kieckhefer Elevator at various locations including, but not limited to: Schlitz Brewery in Milwaukee, Wisconsin and Oshkosh Clothing Company in Oshkosh, Wisconsin.  During this time, Plaintiff Robert Raasch worked with and around asbestos, asbestos-containing products and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products including, but not limited to, asbestos-containing elevators and elevator components.

(c)     From approximately 1970 to 1978, Plaintiff Robert Raasch experienced exposure to asbestos while working as an elevator maintenance mechanic

6

for Otis Elevator at various locations including, but not limited to the following jobsites in Winston-Salem, North Carolina: The Reynolds Building, Schlitz Brewery, Hanes Mall, and R. J. Reynolds Plant. During this time, Plaintiff Robert Raasch worked with and around asbestos, asbestos-containing products and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products including, but not limited to, Westinghouse Elevators, Dover Elevators, and Bendix Brakes.

(d)     From approximately 1978 to 1995, Plaintiff Robert Raasch experienced exposure to asbestos while working as a millwright and maintenance project manager for R. J. Reynolds Plants in Winston-Salem, North Carolina, and Tobaccoville, North Carolina. During this time, Plaintiff Robert Raasch worked with and around asbestos, asbestos-containing products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products including, but not limited to, Otis Elevators and Westinghouse Elevators.

16.     At all times pertinent hereto, the Defendants acted through their duly authorized agents, servants and employees, who were then and there acting in the course and scope of their employment and in furtherance of business of said Defendants.

17.     At all material times, the Defendants manufactured, distributed, sold, supplied, and/or otherwise placed into the stream of commerce asbestos, asbestos-containing products and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products either directly or indirectly to Plaintiff Robert Raasch's employers or to such other entities so that these asbestos-containing products and equipment were caused to be used at Plaintiff Robert Raasch's job sites.

7

18. At all material times, the Defendant Metropolitan Life Insurance Company conspired with other Defendants to disseminate false and misleading medical and/or scientific information regarding the safety of asbestos and demonstrated a clear disregard for the health, safety and welfare of individuals such as Plaintiff Robert Raasch.

## JURISDICTION AND VENUE

19. This Court has personal jurisdiction over the Defendants because the Defendants are duly licensed to do business in the State of North Carolina and/or at all material times are or have been engaged in business in the State of North Carolina.

20. Pursuant to 28 U.S.C.A. §1391, venue is proper in this judicial district because a substantial part of the events or omissions occurred in North Carolina.

21. Further, this Court has jurisdiction over the parties pursuant to 28 U.S.C.A. §1332 because the parties to the suit are completely diverse in that none of the Defendants are citizens of the same state as Plaintiffs. The amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

22. Plaintiffs have satisfied all conditions precedent to the filing of this action.

23. All of the named Defendants listed on the caption are foreign corporations who are amenable to jurisdiction in the courts of North Carolina by virtue of their respective conduct of substantial and/or systematic business in North Carolina which subjects them to the jurisdiction of the North Carolina courts pursuant to the North Carolina Long-Arm Statute. Each Defendant corporation does or in the past mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos, asbestos-containing products and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products, which are or in the past were sold, distributed, and

8

used in North Carolina. As mentioned above, Plaintiff Robert Raasch was exposed to various asbestos, asbestos-containing products and/or dust from equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products while he was working at various jobsites in North Carolina and Wisconsin.

**FIRST CAUSE OF ACTION**
**NEGLIGENCE**
**(Against all named Defendants except Metropolitan Life Insurance Company)**

24.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

25.     At all material times, Defendants are or were miners, manufacturers, distributors, processors, importers, converters, compounders, and/or retailers of asbestos, asbestos-containing products and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products (hereinafter "Defendants' Products").

26.     The Defendants, acting through their agents, servants, and/or employees caused, and have caused in the past, certain Defendants' Products to be placed in the stream of interstate commerce with the result that Defendants' Products came into use by Plaintiff Robert Raasch.

27.     Throughout the course of his employment, Plaintiff Robert Raasch was exposed to Defendants' Products which were mined, manufactured, processed, imported, converted, compounded, and/or sold by the Defendants, most of the exposure being within the State of North Carolina.

28.     During the course and scope of his employment, Plaintiff Robert Raasch was exposed to Defendants' Products, which exposure directly and proximately caused him to develop an illness known and designated as mesothelioma.

29.     Defendants, acting by and through their servants, agents and employees duly authorized and acting within the scope and authority of their employment, had a duty to design,

9

manufacture and sell Defendants' Products that were not unreasonably dangerous or defective and/or a duty to warn Plaintiff Robert Raasch and foreseeable users of Defendants' Products of the dangers and defects which the Defendants created, knew, or within the exercise of reasonable care, should have known.

30.     Plaintiff Robert Raasch, whose livelihood was dependent upon the work that he did for his various employers, was required to work with and around Defendants' Products that were manufactured, processed, distributed, supplied and/or sold by Defendants. Defendants knew or should have known that persons employed, such as Plaintiff Robert Raasch, would be required to and would come into contact with and would work in close proximity to Defendants' Products.

31.     Plaintiff Robert Raasch sustained injuries caused by no fault of his own and which could not be avoided through the use of reasonable care. Plaintiff Robert Raasch's development of an asbestos-related disease was directly and proximately caused by the negligence and carelessness of Defendants in that they manufactured, processed, sold, supplied or otherwise put Defendants' Products into the market and into the stream of interstate commerce while they knew, or in the exercise of ordinary care should have known, that Defendants' Products were deleterious, poisonous, cancer-causing and/or inherently dangerous and harmful to Plaintiff Robert Raasch's body, lungs, respiratory system, skin, health, and general well-being. Further, Defendants knew or in the exercise of reasonable care should have known that Plaintiff Robert Raasch would not know of such danger to his health.

32.     Plaintiff Robert Raasch's illness and/or disabilities are the direct and proximate result of the negligence and carelessness of Defendants, jointly and severally, in that even though the Defendants knew, or in the exercise of ordinary care should have known, that Defendants' Products were deleterious, poisonous, and highly harmful to Plaintiff Robert Raasch's body, lungs,

10

respiratory system, skin, and health, Defendants breached their duties and were negligent in the following acts and/or omissions:

(a) Failed to advise Plaintiff Robert Raasch of the dangerous characteristics of Defendants' Products;

(b) Failed or omitted to provide Plaintiff Robert Raasch with the knowledge as to what would be reasonably safe and sufficient apparel and protective equipment and appliances to reduce exposure to inhalable asbestos fibers, if in truth they were in any way able to protect him from being poisoned and disabled as he was by exposure to such deleterious and harmful Defendants' Products;

(c) Failed and omitted to place any warnings or sufficient warnings on containers of Defendants' Products to warn the handlers of the dangers to health in coming in contact with Defendants' Products;

(d) Failed and omitted to take reasonable precautions or to exercise reasonable care to publish, adopt, and enforce a safety plan and a safe method of handling and installing Defendants' Products;

(e) Inadequately warned, if in fact they warned at all, persons such as Plaintiff Robert Raasch of the dangers to their health in coming in contact with and breathing asbestos fibers from Defendants' Products;

(f) Did not recommend methods to improve the work environment;

(g) Did not develop alternative products;

(h) Continued to use a known cancer-causing product, to-wit: asbestos; and

(i) After discovering that the asbestos exposure caused a progressive lung disease, the Defendants did not inform Plaintiff Robert Raasch of the need

11

for monitoring and periodic evaluations up to and including the filing of this Complaint.

33. Defendants, at the time of designing, manufacturing, distributing, selling, or otherwise placing Defendants' Products into the stream of commerce knew, or in the exercise of reasonable care should have known, about the risks associated with their asbestos-containing products and/or equipment. Defendants' Products in question were defective at the time they left the control of the Defendants.

34. Defendants were negligent and breached their duty of due care to Plaintiff Robert Raasch by taking or failing to take the actions as previously alleged to avoid harm to Plaintiff Robert Raasch and other foreseeable users in light of the reasonably foreseeable dangers caused by the design, manufacture, sale, distribution of Defendant's Products at issue in the stream of commerce.

35. The hazards posed by exposure to Defendants' Products and the resulting injuries and damages to Plaintiff Robert Raasch were reasonably foreseeable, or should have been reasonably foreseen by Defendants.

36. As a direct and proximate result of the aforesaid negligent acts and/or omissions by the Defendants, Plaintiff Robert Raasch developed mesothelioma as a consequence of which, through no fault of his own, he was severely injured, disabled and damaged.

37. As a result of the above, Plaintiffs seek damages as are hereinafter demanded.

**SECOND CAUSE OF ACTION**
**PRODUCT LIABILITY – INADEQUATE DESIGN OR FORMULATION**
**(Against all named Defendants except Metropolitan Life Insurance Company)**

38. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

39.     At all material times, Defendants were engaged in the manufacture, distribution, supply, sale, assembly, production, construction, and/or specification of Defendants' Products.

40.     Defendants, acting through their agents, servants, and/or employees, placed in the stream of commerce Defendants' Products designed, manufactured, distributed, marketed, and/or sold by Defendants that were defective, unsafe and unreasonably dangerous for their intended and/or foreseeable uses with the result that Defendants' Products came into use by Robert Raasch.

41.     Defendants, acting by and through their servants, agents and employees, duly authorized and acting within the scope and authority of their employment, had a duty to design, manufacture and sell Defendants' Products that were not unreasonably dangerous or defective and/or a duty to warn Plaintiff Robert Raasch and foreseeable users of Defendants' Products of the dangers and defects which the Defendants created knew, or within the exercise of reasonable care, should have known.

42.     Defendants acted unreasonably in designing and/or formulating Defendants' Products which were harmful to Plaintiff Robert Raasch's body, lungs, respiratory system, skin and health.  Defendants acted unreasonably in the following acts and/or omissions:

(a)     Failing to adopt a practical, feasible, and otherwise reasonable alternative design that was safer, that could have been reasonably adopted, and that would have prevented or substantially reduced the risk of harm to individuals such as Plaintiff Robert Raasch without substantially impairing the usefulness, practicality or desirability of Defendants' Products; and

(b)     Using a design that was so unreasonable that reasonable person, aware of the relevant facts, would not use or consume Defendants' Products of this design.

13

43.     Defendants, at the time of designing, manufacturing, distributing, selling, or otherwise placing Defendants' Products into the stream of commerce knew, or in the exercise of reasonable care should have known, about the risks associated with Defendants' Products. Defendants' Products in question were defective at the time they left the control of the Defendants.

44.     Defendant's unreasonable acts in designing Defendants' Products manufactured, distributed, sold and specified by Defendants were a proximate cause of Plaintiff Robert Raasch's development of mesothelioma, as a consequence of which through no fault of his own, he was severely injured, disabled and damaged.

45.     As a result of the above, Plaintiffs seek damages as are hereinafter demanded.

**THIRD CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY**
**(Against all named Defendants except Metropolitan Life Insurance Company)**

46.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

47.     The Defendants impliedly warranted that Defendants' Products were of good and merchantable quality and fit for their intended use.

48.     The implied warranty made by the Defendants that Defendants' Products were of good and merchantable quality and fit for the particular intended use was breached and that certain harmful, poisonous, and deleterious matter was given off into the atmosphere wherein Plaintiff Robert Raasch carried out his duties while working with or in the vicinity of Defendants' Products.

49.     As a direct and proximate result of the implied warranty of good and merchantable quality and fitness for the particular intended use, Plaintiff Robert Raasch developed an illness, to-wit: mesothelioma.

50.     As a result of the above, Plaintiffs seek damages as are hereinafter demanded.

14

## FOURTH CAUSE OF ACTION
## WILLFUL AND WANTON CONDUCT
### (Against all named Defendants except Metropolitan Life Insurance Company)

51.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

52.     Plaintiff Robert Raasch and others in his position worked in close proximity to Defendants' Products used or manufactured by the Defendants, and the exposure and hazard to each of them, in Plaintiff Robert Raasch's presence as well as others, was known or in the exercise of reasonable care should have been anticipated by the Defendants and each of them.

53.     The Defendants have known or should have known since at least 1929 of medical and scientific data which clearly indicates that Defendants' Products were hazardous to the health and safety of Plaintiff Robert Raasch and others in Plaintiff's position, and prompted by pecuniary motives the Defendants, individually and collectively, ignored and failed to act upon said medical and scientific data and conspired to deprive the public and particularly the users of said medical and scientific data, depriving them therefore of the opportunity of free choice as to whether or not to expose themselves to Defendants' Products.  As a result, Plaintiff Robert Raasch was severely damaged as is set forth below.

54.     The Defendants intentionally continued to conceal the dangers of asbestos exposure from 1929 through 1970's, thus denying Plaintiff Robert Raasch the knowledge with which to take necessary safety precautions such as periodic x-rays and medical examinations, cessation of smoking, and avoidance of further dust exposure.  Specifically, Defendants' intentional, willful and wanton conduct included the following acts and omissions:

        (a)     failure to warn prior users when the Defendants had knowledge of the need for monitoring due to prior exposure;

        (b)     failure to issue recall type letters to prior users;

15

(c)     frustrating the publication of articles and literature from the 1930's through at least 1976;

(d)     rejection by top management of advice of corporate officials to warn of the hazards of Defendants' Products; such rejection being motivated by the possibility of adverse effects on profits; and

(e)     delaying the use of and/or providing intentionally inadequate warnings on Defendants' Products.

55.     The acts and omissions of each of the Defendants as hereinabove set forth were intentional, willful and wanton, and done with willful disregard of the safety of Plaintiff Robert Raasch and others similarly situated at a time when each of the Defendants had knowledge, or should have had knowledge of the dangerous effect of Defendants' Products upon the body of human beings, including Plaintiff Robert Raasch and others similarly situated, and even though forewarned by tests, standards, promulgations of rules and regulations, statutes, and ordinances recognized by the Defendants and subscribed to by them, nevertheless placed into the stream of commerce for their own profit this dangerous asbestos-containing material and/or equipment with full knowledge that it was being used and would be used in the future to the detriment of the health of Plaintiff Robert Raasch and others similarly situated, and Plaintiffs are thereby entitled to punitive damages.

56.     Accordingly, as a result of the Defendants' conduct which was conducted willfully, wantonly and with malice, and was grossly negligent and in total disregard for the health and safety of users such as Plaintiff Robert Raasch, Plaintiffs therefore seek exemplary and punitive damages against Defendants to punish the Defendants for their actions, which were willful, wanton, gross, with malice, and in total disregard of the health and safety of the users and consumers of their products.

16

## FIFTH CAUSE OF ACTION
## FAILURE TO WARN
### (Against all named Defendants except Metropolitan Life Insurance Company)

57.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

58.     At all times material hereto, the Defendants knew or should have known of the harmful effects and/or dangers of working with Defendants' Products and of exposures to inhalable asbestos.

59.     Defendants had a pre- and post-sale duty to warn individuals working at Plaintiff Robert Raasch's jobsites including, but not limited to, Plaintiff Robert Raasch, of the dangers associated with the use and/or inhalation of asbestos dust and fibers.

60.     Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from Defendants' Products, the Defendants failed to warn and/or inadequately warned Plaintiff Robert Raasch of the dangers including, but not limited to:

> (a)     Failing to provide adequate cautions, warnings, and/or hazard statements and/or explanations with Defendants' Products which should have been designed to provide to Plaintiff Robert Raasch knowledge about the hazards caused by exposure to Defendants' Products and how to eliminate such hazards;
>
> (b)     Failing to provide adequate product inserts, informative brochures, employee training literature, posters, and/or other written materials with Defendants' Products which should have been designed to provide to Plaintiff Robert Raasch knowledge about the hazards caused by exposure

17

to and/or dust from Defendants' Products and how to eliminate such hazards;

(c)    Failing to conduct on-site personnel training sessions with exposed workers which should have been designed to provide to the workers knowledge about the hazards to them caused by exposure to Defendants' Products, and how to eliminate the hazards;

(d)    Failing to adequately test and research Defendants' Products as to the hazards created during their use and failed thereafter to provide the results of such tests and research to exposed persons such as Plaintiff Robert Raasch;

(e)    Failing to inspect the workplace in which Defendants' Products were being used to determine if the Defendants' Products being used were deleterious to the health of exposed workers;

(f)    Failing to design, process and transport Defendants' Products in a manner intended to minimize exposure during normal working conditions;

(g)    Failing to specify and market Defendants' Products on the express agreement that necessary engineering controls, work practices, and other industrial hygiene controls would be implemented in conjunction with use of Defendants' Products after it was known or should have been known that adequate protective measures were not being implemented;

(h)    Failing to recall their defective Defendants' Products or manufacture a reasonably safer alternative;

(i)    Failing to take adequate precautions and industrial hygiene measures to protect exposed workers as Plaintiff Robert Raasch when installing,

18

repairing, or tearing out Defendants' Products including, but not limited to, providing protection from dust and fibers emanating from the installation, repair, and/or removal process; failing to use local ventilation; failing to provide warnings to Plaintiff Robert Raasch and workers in the facilities at issue that exposure to dust and fibers from Defendants' Products was hazardous and carcinogenic; failing to adequately clean up debris from the installation, repair and/or removal process; failing to use wet down procedures; and/or failing to take other appropriate safety and industrial hygiene measures;

(j)     Otherwise failing to act reasonably under the totality of the circumstances.

61.     Defendants manufactured, processed and/or sold Defendants' Products used by Plaintiff Robert Raasch, or by workers around him, during his employment at various premises. Thus, Defendants had a pre- and post-sale duty to warn individuals working at jobsites including, but not limited to, Robert Raasch, of the dangers associated with the use and/or inhalation of dust and fibers from Defendants' Products.

62.     Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from Defendants' Products, the Defendants acted unreasonably in failing to provide adequate warnings and/or instructions as to the hazards associated with exposure to Defendants' Products. Defendants had a continuing duty to provide post-sale warnings of dangers associated with Defendants' Products to users.

63.     At the time Defendants' Products left Defendants' control without adequate warning or instruction, Defendants created an unreasonably dangerous condition that they knew or should have known would pose a substantial risk of harm to a reasonably foreseeable claimant, such as Plaintiff Robert Raasch. In the alternative, after Defendants' Products left Defendants'

19

control, Defendants became aware of or in the exercise of ordinary care should have known that Defendants' Products posed a substantial risk of harm to a reasonably foreseeable user such as Plaintiff Robert Raasch, and failed to take reasonable steps to give adequate warning or instruction or to take any other reasonable action under the circumstances.

64.     Defendants' failure to provide adequate warnings as to the hazards associated with exposure to Defendants' Products or to provide proper instructions on the use, handling, and storage of Defendants' Products caused Plaintiff Robert Raasch to develop mesothelioma as a consequence of which he was injured and damaged, and Plaintiffs hereby make a claim for damages from the Defendants jointly and severally.

65.     As a result of the Defendants' failure to warn, Plaintiff Robert Raasch suffered the injuries, illnesses, and/or damages hereinafter alleged.

**SIXTH CAUSE OF ACTION**
**CONSPIRACY AND PUNITIVE DAMAGES**
**(Against Metropolitan Life Insurance Company Only)**

66.     Defendant METROPOLITAN LIFE INSURANCE COMPANY rendered substantial aid and assistance to the manufacturers of asbestos-containing products and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products to which Plaintiff Robert Raasch was exposed, and such assistance by METROPOLITAN LIFE aided and abetted the negligence and the marketing of unreasonably dangerous said asbestos-containing products and/or equipment by such manufacturers which proximately caused Plaintiff Robert Raasch's illness, injuries, and/or disabilities.

67.     In both conducting tests and in publishing their alleged results, METROPOLITAN LIFE failed to exercise reasonable care to conduct or publish complete, adequate and accurate tests of the health effects of asbestos.  METROPOLITAN LIFE also caused to be published intentionally

20

false, misleading, inaccurate and deceptive information about the health effects of asbestos exposure.

68.     Plaintiff Robert Raasch unwittingly but justifiably relied upon the thoroughness of METROPOLITAN LIFE's tests and information dissemination, the results of which METROPOLITAN LIFE published in leading medical journals.

69.     As a direct and proximate contributing result of METROPOLITAN LIFE's failures to conduct or accurately publish adequate tests or disseminate accurate and truthful information, after undertaking to do so; (i) the risk of harm to Plaintiff Robert Raasch from asbestos exposure was increased, and (ii) Plaintiff Robert Raasch suffered the injuries previously described.

70.     In failing to test fully and adequately for the adverse health effects from exposure to asbestos; in delaying the publication of such results; in falsely editing such results as were obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product; and in collaborating with the other Defendants materially to understate the hazards of asbestos exposure, all for their own profit and gain, METROPOLITAN LIFE acted willfully, wantonly, and with malice in calculated disregard for the welfare of the general public, including Plaintiff Robert Raasch. Plaintiffs seek compensatory and punitive damages against METROPOLITAN LIFE as a result.

## SEVENTH CAUSE OF ACTION
## ALLEGATIONS AGAINST PREMISE DEFENDANTS

71.     Plaintiff Robert Raasch worked at premises owned and/or controlled by **CBL & ASSOCIATES, INC.** a/k/a CBL & ASSOCIATES PROPERTIES, INC. d/b/a HANES MALL, **CBL & ASSOCIATES MANAGEMENT, INC.** d/b/a HANES MALL, **KIMPTON HOTEL & RESTAURANT GROUP, LLC** (sued individually and as an owner of the REYNOLDS BUILDING), **OSHKOSH B'GOSH, INC.**, a subsidiary of CARTER'S INC., and **PMC PROPERTY GROUP, INC.** (sued individually and as an owner of the REYNOLDS BUILDING)

21

(hereinafter "Premise Defendants") where he worked with or around asbestos, asbestos-containing products and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products.

72.     While present at the premises owned and/or controlled by the Premise Defendants, Plaintiff Robert Raasch was continuously exposed to asbestos, asbestos-containing products and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products without the provision of appropriate safeguards by the Premise Defendants who had the responsibility for such.

73.     Plaintiffs would further show that Plaintiff Robert Raasch's injuries and diseases were the result of intentional acts and/or omissions and/or negligence, gross negligence and malice in the use of asbestos, asbestos-containing products and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products at premises owned and/or controlled by the Premise Defendants. Premise Defendants failed to properly remove and/or abate said asbestos-containing products and/or equipment at their facilities during the time Plaintiff Robert Raasch was working there.

74.     Plaintiffs would show that the Premise Defendants were negligent, grossly negligent and malicious, and committed certain intentional acts, all of which were the proximate cause of Plaintiff Robert Raasch's disease and injuries resulting in mesothelioma from exposure to asbestos.

75.     In particular, Plaintiffs would show that the Premise Defendants demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of Plaintiff Robert Raasch, and that such intentional acts and omissions proximately caused Plaintiff Robert Raasch's disease and injuries.

76.     Specific intentional acts and acts constituting negligence, gross negligence and malice committed by the Premise Defendants that proximately caused Plaintiff Robert Raasch's injuries and disease include:

        (a)     Failure to provide safe equipment for Plaintiff Robert Raasch to use;

22

(b)    Failure to provide adequate safety measures and protection against deadly and life-threatening asbestos dust, all despite Premise Defendants' knowledge of the extreme risk of harm inherent to asbestos exposure;

(c)    Failure to adequately warn Plaintiff Robert Raasch and other users of the inherent dangers of asbestos contamination;

(d)    Failure to maintain the ambient and environmental conditions of the premises in proper and safe condition;

(e)    Failure to follow and adhere to various states and U.S. Government statutes, regulations and guidelines pertaining to asbestos and the exposure to asbestos of individuals. Such failure constituted negligence per se at a minimum.

77.    Plaintiffs would further show that Premise Defendants intentionally, knowingly, and/or due to negligence, gross negligence and malice failed to ensure that individuals such as Plaintiff Robert Raasch were protected from the inhalation of asbestos and asbestos fibers. Such actions proximately caused Plaintiff Robert Raasch's injuries and illness.

78.    Additionally, specific actions or omissions on the part of Premise Defendants that proximately caused Plaintiff Robert Raasch's injuries and illness were:

(a)    Attempting to remove asbestos dust in Plaintiff Robert Raasch's workplaces without taking adequate precautions for the protection of workers in the vicinity and/or in the premises generally;

(b)    Failing to provide proper protective gear for individuals exposed to asbestos;

(c)    Failing to provide adequate ventilation to ensure that individuals in the vicinity were not exposed to asbestos;

(d)    Failing to provide a proper and safe method for the use of asbestos and asbestos fibers;

23

(e)     Failing to adhere to industry safe standards and other established measures to protect workers and/or household members from harm; and

(f)     Failing to adequately warn of the extreme risk of danger inherent to asbestos exposure.

79.     Premise Defendants demonstrated such an entire want of care as to establish that their acts and omissions alleged above were the result of actual conscious indifference to the rights, safety, and welfare of Plaintiff Robert Raasch.

## DAMAGES
## LOSS OF CONSORTIUM

80.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

81.     Plaintiffs Robert Raasch and Linda Raasch were married on August 31, 1969, and have remained married at all times material hereto.

82.     As a direct and proximate result of the injuries and damages complained of herein with respect to Plaintiff Robert Raasch, and as a direct and proximate result of the acts and omissions of the Defendants, Plaintiff-Spouse Linda Raasch has also suffered and will continue to suffer loss of the consortium, society, companionship, fellowship and other valuable services of her husband; and therefore, Plaintiff-Spouse Linda Raasch is entitled to damages for her loss of consortium, both past and future.

## COMPENSATORY AND PUNITIVE DAMAGES

83.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

84.     As a result of the above-alleged conduct of the Defendants, Plaintiff Robert Raasch developed mesothelioma, as a consequence of which, he has been damaged as follows:

(a)     hospital and medical expenses incidental to Plaintiff Robert Raasch's illness;

24

(b)     loss of earnings and future earning power of Plaintiff Robert Raasch;

(e)     loss of Plaintiff Robert Raasch's general health, strength, and vitality;

(c)     loss of pecuniary contributions to the heirs of Plaintiff Robert Raasch;

(d)     loss of consortium, society, aid, companionship and services to the heirs of Plaintiff Robert Raasch;

(e)     future loss of consortium, society, aid, companionship and services to the heirs of Plaintiff Robert Raasch;

(f)     pain and suffering of Plaintiff Robert Raasch;

(g)     all other damages recoverable under said Act.

WHEREFORE, the Plaintiffs verily believe they are entitled to actual damages against the Defendants, jointly and severally, by reason of said negligence, gross negligence, breach of warranty, false representation, failure to warn, conspiracy and other breaches of duty, and willful, wanton, and malicious conduct as alleged herein proximately caused by the fault of the Defendants. Plaintiffs pray for judgment against all Defendants for actual and punitive damages, lost wages and special damages in an amount to be determined by the trier of fact, in excess of $75,000.00 plus interest as provided by law and the costs of this action.

**PLAINTIFFS REQUEST TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

This 22nd day of February, 2017.

/s/ Janet Ward Black
Janet Ward Black
NC State Bar 12869
Attorney for Plaintiffs
Ward Black Law
208 W. Wendover Ave.
Greensboro, NC  27401
336-333-2244
jwblack@wardblacklaw.com